[610 NYS2d 962]

In the Matter of PILGRIM PSYCHIATRIC CENTER, Appellant. CHRISTIAN F., Respondent.

Second Department, April 25, 1994

## APPEARANCES OF COUNSEL

*G. Oliver Koppell, Attorney-General,* New York City *(Patricia M. Hingerton* of counsel), for appellant.

*Mental Hygiene Legal Service,* Mineola *(Gerald W. Kaplan, Kim L. Darrow* and *Dennis B. Feld* on the brief), for respondent.

## OPINION OF THE COURT

KRAUSMAN, J.

The central issue presented on appeal is whether a psychiatric hospital may convert a voluntary patient to the status of an involuntary patient pursuant to Mental Hygiene Law § 9.27 based upon the certificates of two examining physicians, but without obtaining confirmation of the patient's need for involuntary treatment by a third physician who is a member of the hospital's psychiatric staff. For the reasons which follow, we conclude that a psychiatric hospital which seeks to convert a voluntary patient's status pursuant to Mental Hygiene Law § 9.27 must fully comply with all requirements of that statute, including the requirement that a third physician confirm the need for involuntary commitment. We therefore find that the appellant's attempt to convert the respondent to involuntary status without adhering to the requirements of section 9.27 was ineffective, and, accordingly, that the Supreme Court properly dismissed the appellant's petitions.

The respondent was admitted to the Pilgrim Psychiatric Center on May 15, 1984, as an involuntary patient. On December 16, 1987, the respondent was converted to a voluntary patient pursuant to Mental Hygiene Law § 9.13. The respondent has been continuously hospitalized since his admission in 1984 to the Pilgrim Psychiatric Center, and has not requested discharge. However, in July 1991, the respondent, who suffers from depression and an atypical bipolar disorder, refused to undergo electroconvulsive therapy.

In response to the respondent's refusal to undergo the recommended treatment, on July 23, 1991, the hospital attempted to convert his status to that of an involuntary patient pursuant to Mental Hygiene Law § 9.27 (a), which permits a hospital to "receive and retain therein as a patient any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians, accompanied by an application for the admission of such person". Although the hospital's application to admit the respondent as an involuntary patient was accompanied by the certificates of two examining physicians as required by the provisions of Mental Hygiene Law § 9.27 (a), it was not accompanied by a third physician's confirmation of the respondent's need for involuntary care as further required under Mental Hygiene Law § 9.27 (e).

The hospital subsequently commenced a special proceeding to authorize its director to arrange for the respondent to undergo electroconvulsive treatment. While its application was pending, the hospital also commenced a second proceeding seeking authorization to retain the respondent as an involuntary patient. The respondent thereafter moved to dismiss both proceedings, contending that the hospital's attempt to readmit him as an involuntary patient had been ineffective due to the hospital's failure to comply with Mental Hygiene Law § 9.27 (e), which requires the director of the hospital where a mentally ill person "is brought" to "cause such person to be examined forthwith by a physician who shall be a member of the psychiatric staff of such hospital other than the original examining physicians whose certificate or certificates accompanied the application". The respondent argued that he thus remained a voluntary patient, and therefore could not be given treatment over his objection (see, 14 NYCRR 27.8 [b] [2]). The respondent further contended that the hospital's retention petition failed to state a cause of action, noting in this regard that Mental Hygiene Law § 9.33 (a) authorized a hospital to institute a retention proceeding only where the subject patient "does not agree to remain in such hospital as a voluntary patient". The hospital countered that the statutory requirement that a third physician confirm the patient's need for involuntary hospitalization applied only upon an individual's initial admission to the hospital, and was not required for an administrative change of the patient's status. The Supreme Court (Brown, J.) rejected the hospital's claim, and granted the respondent's motion to dismiss, reasoning that in view of

the substantial curtailment of liberty brought about by involuntary civil commitment, it was not unreasonable to require the hospital to comply with the provisions of Mental Hygiene Law § 9.27 (e) even where the individual to be involuntarily admitted was already a patient at the hospital. We now affirm.

Pursuant to 14 NYCRR 27.8 (b) (2), a patient confined to a psychiatric hospital on a voluntary basis may not be given treatment over his or her objection. Where, however, a voluntary patient is alleged to have objected to all recommended forms of treatment, the rule further provides that the hospital may, "if appropriate, take steps to convert the patient to involuntary status as set forth in the Mental Hygiene Law" (14 NYCRR 27.8 [b] [2]). Although the rule permits a hospital to take steps to convert such a patient to involuntary status, article 9 of the Mental Hygiene Law, which sets forth the standards and procedures for the civil commitment of mentally ill persons in New York State, does not contain a provision which expressly governs the involuntary commitment of a voluntary patient who has allegedly refused all forms of recommended treatment, but who has expressed no desire to be discharged from the hospital. In the absence of such a specific provision, the hospital attempted an "administrative" conversion of the respondent's status to that of an involuntary patient by filing an application accompanied by the certificates of two examining physicians in partial compliance with the procedures set forth in Mental Hygiene Law § 9.27. Although Mental Hygiene Law § 9.27 (e) further requires a third physician who is a member of the psychiatric staff at the hospital where the patient is to be admitted to examine the patient and confirm the need for involuntary commitment, the hospital continues to maintain on appeal that this subdivision of the statute applies only where a person "is brought" to the hospital for initial admission. We disagree.

One of the cardinal rules of statutory construction is that all parts of the statute must be read and construed together to determine the legislative intent (see, McKinney's Cons Laws of NY, Book 1, Statutes § 97; Heard v Cuomo, 80 NY2d 684; Matter of Bookhout v Levitt, 43 NY2d 612, 617). The intent of the Legislature is the primary object sought in the interpretation of the statute (see, Rankin v Shanker, 23 NY2d 111, 114), and to this end, the spirit, purpose, and objectives of the statute must be considered by the court (see, Matter of Judd v

*Constantine,* 153 AD2d 270, 277). Guided by these principles, we find that a hospital which seeks to readmit a voluntary patient as an involuntary patient pursuant to Mental Hygiene Law § 9.27 must fully comply with all of the provisions of that statute. As the hospital acknowledges, article 9 of the Mental Hygiene Law is designed to provide mentally ill persons with procedural safeguards in order to protect such persons against the danger of "railroading" a person into a psychiatric institution. However, contrary to the hospital's contention, an individual already hospitalized as a voluntary patient remains in need of the basic procedural safeguards provided by Mental Hygiene Law § 9.27 before he or she is deprived of voluntary status and administratively readmitted as an involuntary patient. Involuntary civil commitment to a mental hospital has been recognized to be " 'a massive curtailment of liberty' " *(Vitek v Jones,* 445 US 480, 491). It is significant to note, as the respondent urges, that voluntary patients have two important rights not granted to involuntary patients: the right not to be transferred from one institution to another without their consent *(see,* Mental Hygiene Law § 29.11 [b]), and the right not to be treated over their objection *(see,* 14 NYCRR 27.8 [b] [2]; 527.8 [c] [3]).

We note, moreover, that in recognition of the fact that a voluntary patient, who is presumed to understand the need for medical attention, will be more likely to actively participate in the course of his or her treatment, thus enhancing the likelihood of success *(see, Matter of Buttonow,* 23 NY2d 385), article 9 expressly encourages individuals afflicted with mental illness to apply for hospital admission on a voluntary basis *(see,* Mental Hygiene Law § 9.21 [a]). Considering both the Mental Hygiene Law's clearly expressed preference for voluntary admission, and the substantial deprivation of liberty to which an involuntary patient is subjected, it would be inconsistent with the spirit and purpose of article 9 to narrowly construe Mental Hygiene Law § 9.27 (e) as inapplicable to the instant case, where the hospital is in essence seeking to readmit a voluntary patient as an involuntary patient in order to override the patient's refusal to submit to a recommended course of treatment. Furthermore, we reject the hospital's claim that compliance with the requirement of Mental Hygiene Law § 9.27 (e) that a mentally ill person be afforded the safeguard of examination by a third physician before an involuntary admission would be unduly burdensome in these circumstances. We further note that while the hospital addi-

tionally argues that it has been the long-standing policy of the New York State Office of Mental Health to require a third physician's confirmation only upon a patient's initial admission to a hospital, this claim is raised for the first time on appeal, and there is no evidence of the existence of such a policy in the record. Consequently, we conclude that the hospital's failure to fully comply with the provisions of Mental Hygiene Law § 9.27 rendered its attempt to convert the respondent's status to that of an involuntary patient ineffective, and that the Supreme Court properly dismissed the petitions.

LAWRENCE, J. P., JOY and FRIEDMANN, JJ., concur.

Ordered that the orders are affirmed, without costs or disbursements.