OPINION OF THE COURT
Reinaldo E. Rivera, J.
I. factual background
This matter is before the court, sitting at Special Term -77 (Mental Hygiene) on application(s) by the petitioner hospital for authorization to medicate the respondent patient, and for her continued involuntary retention, and on motion(s) by Mental Hygiene Legal Services (MHLS), counsel for the patient, to dismiss both of the hospital’s applications.
On December 9, 1996, the respondent patient, Guia G., a homeless 36-year-old divorced Filipino female, was admitted as a patient with the petitioner Maimonides Medical Center’s Community Mental Health Center on an emergency basis under section 9.39 of the Mental Hygiene Law. She was alleged to have exhibited agitated delusional behavior and to have threatened to kill her landlady. Further, there is a history of psychiatric treatment and hospitalization. Her psychiatric diagnosis is bipolar disorder I, with the most recent episode being manic, severe with psychotic, paranoid features. The requested treatment objectives and anticipated benefits are cessation of psychosis, mood stabilization, elimination of dangerous behavior toward herself and improved functioning.
On December 23, 1996 (within the 15 days mandated by Mental Hygiene Law § 9.39 [b]) the patient was admitted on an involuntary basis on application supported by medical certification under Mental Hygiene Law § 9.31. This is commonly referred to as a 2PC (two physician certificate) conversion. The hospital was thereupon authorized by statute to retain the patient for 60 days from the date of her emergency admission on December 9, 1996. (Mental Hygiene Law § 9.39 [b].) If the hospital determined that continued retention was necessary to provide involuntary care and treatment, it was required to apply to the court prior to the expiration of the 60 days. (Mental Hygiene Law § 9.33 [a].) The 60 days expired on February 7, 1997.
*113 No application by the hospital to retain the patient on an involuntary basis was received by the court prior to the expiration of the 60-day period set forth in Mental Hygiene Law § 9.33. The patient did not, at any point prior to the expiration of the 60 days, request a hearing to adjudicate the need for her involuntary detention. The statute provides that, if, prior to the expiration of the 60-day period from the date of the emergency admission, the patient requested a court hearing on the question of need for immediate observation, care and treatment or on the question of need for involuntary care and treatment, she was entitled to such hearing not more than five days after the request was received. (Mental Hygiene Law §§ 9.39, 9.31.)
On February 11, 1997, the hospital presented to the court an order to show cause seeking authorization to medicate the patient over her objection (commonly referred to as a medication override). The order to show cause provided for service upon Mental Hygiene Legal Services and the patient by 5:00 p.m. on February 11, 1997 and a hearing on February 13, 1997. On the hearing date, February 13, 1997, the court first received from Maimonides Medical Center an application for authorization to retain the patient pursuant to Mental Hygiene Law § 9.33. That same day, MHLS moved to dismiss both the hospital’s applications, claiming the court had no jurisdiction to adjudicate them because the retention application had not been timely filed. The hospital opposed the motions to dismiss. The court reserved decision and requested memoranda of law.
In its memoranda of law, MHLS did not address the retention application; did not request a hearing pursuant to Mental Hygiene Law § 9.33 (a); did not move for discharge of the patient; and did not petition for a writ of habeas corpus on the patient’s behalf. MHLS sought only a ruling limited to the issue of the court’s jurisdiction to adjudicate the hospital’s application to medicate over the patient’s objection, asserting the following:
(1) 14 NYCRR 527.8 (c) (4) (ii) and 27.8 (b) require that authorization to medicate over a patient’s objection may only be made with respect to a patient involuntarily admitted;
(2) the 60-day period authorized for the patient’s initial involuntary admission had expired on February 7, 1997;
(3) no application for retention had been filed prior to the expiration of the 60 days on February 7, 1997;
(4) the patient’s status was therefore no longer an involuntary admission, but an illegal detention;
*114 (5) under such circumstances an application to medicate was not authorized and must be dismissed.
The hospital, in its memorandum of law, contended that it had effected personal service on the patient of notice of the retention application prior to the 60th day and mailed the retention application to the court and MHLS on the 60th day. The hospital asserted that such service had timely invoked the court’s jurisdiction to consider both applications.
On March 10, 1997, the court issued the following rulings and orders on the record: (1) The application for authorization to medicate was dismissed since the required jurisdictional basis for such an application was absent (14 NYCRR 527.8 [c] [4] [iij; 27.8 [b]) and (2) The court stated its intention to consider the retention application. On its own motion the court (pursuant to Mental Hygiene Law § 9.33 [c]) ordered a hearing to be held on the fifth working day following the date of the order issued on the record on March 10, 1997. (The patient had five days from the filing of the retention application on February 13,1997 to request a hearing. As of March 10,1997, the patient had not done so.) The parties were ordered to be prepared to proceed with a hearing in this matter on Monday, March 17, 1997. The hospital was ordered to reapply for authorization to medicate over the patient’s objection if it deemed it necessary. The new application was to be served on MHLS and the patient, and filed with the court on or before March 15, 1997, and to be considered by the court at the hearing on March 17, 1997.
II. QUESTIONS PRESENTED
This case brings up for consideration questions and issues of precedential significance related to jurisdiction, legislative intent, statutory construction, judicial discretion and public policy. The threshold issues presented are: (1) What constitutes timely commencement of a proceeding for court authorization to retain an involuntary patient under Mental Hygiene Law § 9.33 and (2) may the court adjudicate an application to retain an involuntary patient if the proceeding was not timely commenced?
III. LEGAL ANALYSIS
A. Timely Commencement Of Retention Proceeding
Mental Hygiene Law § 9.33/CPLR 304 The hospital contends that the retention application was timely. Thus, the required condition precedent for applying for *115 authorization to medicate was present. The retention application was personally served on the patient on February 6, 1997, within the 60-day period set forth in Mental Hygiene Law § 9.33 (a). It was served by mail on February 7, 1997 on MHLS and on the court. The hospital submitted proof of service. Relying on Matter of Klahs (55 Misc 2d 462), the hospital asserts that such service invokes the court’s jurisdiction irrespective of the court’s receipt of such application in those 60 days.
An application for authorization to retain an involuntary patient pursuant to Mental Hygiene Law § 9.33 falls within the definition of a civil judicial proceeding under CPLR 105 (d). (See, Matter of Klahs, 55 Misc 2d 462, supra.) CPLR 105 (d) defines a civil judicial proceeding as "a prosecution, other than a criminal action, of an independent application to a court for relief.” The term encompasses civil actions and civil special proceedings. (Civ Prac Act §§ 4, 5; General Construction Law §§ 11, 11-a, 12, 46-a.)
Mental Hygiene Law § 9.33 (a) clearly sets forth a time frame within which a retention application must be made: "the director shall apply to the supreme court * * * no later than sixty days from the date of involuntary admission”. The statute does not specify what is meant by "the director shall apply”, therefore, the provisions of the CPLR governing commencement of actions and special proceedings are applicable. (See, Matter of Spodek v New York State Commr. of Taxation & Fin., 85 NY2d 760 [1995]; Matter of Klahs, 55 Misc 2d 462, supra; Alexander, 1996 Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C304:l, 1997 Pocket Part, at 64.)
CPLR 304 is the applicable statute. It was amended in 1992 to change the method for commencing actions and proceedings to a "commencement by filing” system (see, L 1992, ch 216). Prior to July 1, 1992, actions and special proceedings were commenced in New York by service of process. As a result of the amendment, service of process on the defendant no longer marks interposition of a claim for Statute of Limitations purposes. (See, Matter of Spodek v New York State Commr. of Taxation & Fin., supra.)
Commencement by filing requires actual physical receipt of the papers by the clerk of the court. (See, Enos v City of Rochester, 206 AD2d 159 [4th Dept 1994], for analysis of legislative intent with respect to meaning of "filing”.) Mailing to the clerk of the court does not constitute "filing” within the meaning of the CPLR’s "commencement by filing” procedure. In this *116 case, mailing the retention application to the court on the 60th day did not constitute "filing” for purposes of timely applying for retention of the patient. The retention application was not actually received by the court until February 13, 1997, 6 days subsequent to the expiration of the 60th day. Therefore, this special proceeding for court authorization to retain an involuntary patient was not timely commenced.
B. Jurisdictional Ramifications Of Untimely Application
To Retain Involuntary Patient
MHLS contends that the court’s subject matter jurisdiction cannot be invoked after the expiration of the statutory 60-day time period within which a retention application must be made. (Mental Hygiene Law § 9.33.)
This court disagrees. The 60-day time frame does not constitute a Statute of Limitations which bars judicial intervention and mandates automatic dismissal. A dismissal of the application to medicate is warranted not because of a failure to timely invoke the court’s jurisdiction, but because the court cannot order forced medication of an illegally detained patient.
The failure to timely apply for continued retention of the patient caused an illegal detention of the patient between February 7, 1997 and February 13, 1997. (See, People ex rel. Noel B. v Jones, 230 AD2d 809 [2d Dept 1996].) As a result, the condition precedent for applying for authorization to medicate the patient, to wit, legal involuntary status, was absent on February 11, 1997. (14 NYCRR 527.8 [c] [4] [ii]; 27.8 [b].)
An illegal detention does not ipso facto result in dismissal of the retention application, however. A retention application requires a judicial determination despite the hospital’s failure to comply with statutory procedures. (See, People ex rel. Noel B. v Jones, supra, at 811 ["we do not agree * * * that the respondent’s retention application should be dismissed or that his immediate discharge is the required remedy for the respondent’s failure to comply with statutory procedures”].) The consequence of summary dismissal of a, retention application, discharge of the patient, is potentially far more serious than disallowing forced administration of medication. The Mental Hygiene Law clearly does not contemplate this type of automatic release.
Commencement of a special proceeding to retain an involuntary patient is not the procedural equivalent of the interposition of a claim for Statute of Limitations purposes. The time *117 requirements in the Mental Hygiene Law serve separate and distinct purposes and policy objectives than the Statute of Limitations.
A Statute of Limitations prescribes a period of time in which an action may be brought in order to protect citizens from stale and vexatious claims and to end the possibility of litigation after a reasonable length of time. (Guaranty Trust Co. v United States, 91 F2d 898, revd on other grounds 304 US 126 [1938]; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C201:5, at 63.)
In contrast, the 60-day period at issue in Mental Hygiene Law § 9.33 is intended to safeguard the constitutional due process rights of patients by limiting the period they may be held involuntarily before clear-cut decisions about detention or discharge must be made. (Governor’s Mem approving L 1972, ch 251, 1972 McKinney’s Session Laws of NY, at 3386.)
The hospital’s failure to comply with the statute is unacceptable and cannot be condoned or disregarded. (.People ex rel. Noel B. v Jones, supra.) However, when an individual is deemed to be a potential danger to self and others and in need of involuntary care and treatment, the court has a responsibility to balance the patient’s liberty interest against the State’s obligation to protect the patient and other members of society. This balancing of competing interests requires a hearing, irrespective of the hospital’s failure to comply with the time requirements of Mental Hygiene Law § 9.33.
C. Parens Patriae vs. Personal Liberty: Judicial Role In Involuntary Retention Proceedings
Involuntary civil commitment has been recognized to be a significant curtailment of liberty. (Addington v Texas, 441 US 418; Humphrey v Cady, 405 US 504 [1972]; People ex rel. Noel B. v Jones, supra; Matter of Pilgrim Psychiatric Ctr. [Christian F.], 197 AD2d 204, 208 [2d Dept 1994]; Matter of Harry M., 96 AD2d 201, 206 [2d Dept 1983].)
It is well established that involuntary confinement of an individual must be based on a finding that the person to be committed poses a real and present threat of substantial harm to herself or others. (Matter of Scopes, 59 AD2d 203 [3d Dept 1977].) In the exercise of its police power a State may confine individuals to protect society from the dangers of significant antisocial acts. (O’Connor v Donaldson, 422 US 563, 583.)
The State’s parens patriae power vests the State with the duty to protect persons unable to care for themselves but it *118 may not be exercised indiscriminately nor invoked to confine a nondangerous individual solely for the purpose of providing treatment. Due process will not tolerate the involuntary commitment of an individual who does not present a danger to herself or others irrespective of whether hospitalization would provide the individual with beneficial treatment.
New York’s mental hygiene statute represents a balanced approach to the interests of the individual and the community. Numerous safeguards are provided in the law to protect mentally ill persons against the danger of being "railroaded” into a psychiatric institution. (Matter of Pilgrim Psychiatric Ctr. [Christian F.J, 197 AD2d 204, 208 [2d Dept 1994], supra.) These safeguards include the establishment of the Mental Hygiene Legal Services, the right to expeditious hearings, involuntary admission upon medical certification by two physicians (2PC), temporary periods of detention and periodic court reexamination of the detention. (Governor’s Mem approving L 1972, ch 251, 1972 McKinney’s Session Laws of NY, at 3386; Governor’s Mem approving L1964, ch 738, 1964 McKinney’s Session Laws of NY, at 1968; Note, Recent Statutes — Insane Persons, 43 Tex L Rev 599.)
The Mental Hygiene Law authorizes the court to order continued retention of a patient admitted upon an application supported by medical certification if that patient is "in need of retention”. (Mental Hygiene Law § 9.33 [a].) "[N]eed for retention” means that a person who has been admitted to a hospital pursuant to this article is in need of involuntary care and treatment in a hospital for a further period. (Mental Hygiene Law § 9.01.) "[I]n need of involuntary care and treatment” means that a person has a mental illness for which care and treatment as a patient in a hospital is essential to such person’s welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment. (Mental Hygiene Law § 9.01.)
The inability to understand the need for care and treatment essential to that person’s welfare has been repeatedly held to encompass a finding that the patient poses a substantial threat of physical harm to self or others. (O’Connor v Donaldson, supra; Matter of Harry M., supra; Matter of Jeannette S., 157 AD2d 783 [2d Dept 1990]; Matter of Edward L., 137 AD2d 818 [2d Dept 1988].) This element of the threat of potential harm to self or others which is implicated in cases involving involuntary patients mandates judicial consideration of the competing interests involved. When the patient presents a danger to *119 herself or other members of society or engages in dangerous conduct due process requires the court to strike a balance between the competing and conflicting interests. (Rivers v Katz, 67 NY2d 485 [1986].)
This mandate exists irrespective of noncompliance with the statute. This mandate militates against dismissal of the retention application and immediate discharge of the patient as a "knee-jerk” remedy for illegal detention. (See, People ex rel. Noel B. v Jones, 230 AD2d 809, supra.)
IV. CONCLUSIONS
It is well settled that statutory language must be construed as a whole. (McKinney’s Cons Laws of NY, Book 1, Statutes § 97.) Giving the mental hygiene statute its full significance, it is clear that whenever a mental health facility seeks to retain an individual involuntarily, procedural defects may not impede the intended judicial balancing of the competing interests.
While it is important to attempt to discern legislative intent and ensure that the law is complied with, excessive focus on procedural interpretation and statutory construction is nonproductive in the area of Mental Hygiene Law. Motion practice addressed to form and/or procedure over substance may result in short-term narrow "victories”. Ultimately it serves only to deflect the court’s attention from the essential issues which must inevitably be considered. The mental hygiene statute is replete with safeguards to obviate the danger of invasion of an individual’s liberty interest via illegal detention. No patient is left without recourse if he or she questions the need for involuntary hospitalization. Litigation over procedural issues may well result in further invasion of the patient’s liberty interest and in preventing the patient from receiving adequate care and treatment.
This court’s conclusion does not obviate or overlook the hospital’s failure to comply with the statute. Notwithstanding the fact that the patient has not requested release, her liberty interest was violated for six days. (People ex rel. Noel B. v Jones, supra.)
While it is widely recognized that laxity in complying with the time requirements of the Mental Hygiene Law cannot be countenanced, the statute does not provide for the imposition of sanctions for failure to comply. This is an issue which warrants attention from the Legislature.
If the court determines that a patient is in need of continued involuntary retention, it may order any period of retention it *120 deems appropriate, not to exceed six months. In the interest of balancing the competing interests and equities, options are available to the court within the discretionary provisions of the statute: it may reduce the period of continued retention being requested; it may order the hospital to reapply immediately for continued retention; or it may order an immediate hearing on the retention application. In cases where the court finds continued involuntary retention of the patient is not warranted, the patient may pursue civil remedies for the illegal detention.
V. DECISION
For the reasons stated in this opinion, the medication override petition is dismissed. The retention application will be determined at a hearing. The hospital may resubmit a medication override application which will be scheduled for a hearing on or after the date of the retention hearing. The patient may avail herself of any and all the available procedural safeguards.