OPINION OF THE COURT David H. Guy, J. Petitioner, Edward Major, M.D., Designee Director of Mental Health Services, UHSH-Binghamton General Hospital, by-Heather V. Miller, Esq., Assistant General Counsel, applied to this court for an order authorizing administration of certain treatment for W.S., a patient at UHS Hospitals, Binghamton General Hospital. The Mental Hygiene Legal Service was appointed to represent and protect the interests of the patient, and an order to show cause was served upon the patient, the Mental Hygiene Legal Service and Edward Major, M.D., Designee Director of Mental Health Services, UHSH-Binghamton General Hospital. A hearing was held on September 11, 2017. The patient was not present, but was represented by the Mental Hygiene Legal Service, Hollie Levine, Esq., of counsel. The petitioner was represented by Heather V. Miller, Esq., of counsel. The court heard testimony from Clifford Weller, M.D., attending physician of the patient. Dr. Weller testified that for a time the patient was compliant at Binghamton General Hospital, resulting in his improvement. The patient was initially placed on Risperdal, with some improvement, but that medication was stopped due to an adverse side effect. The patient was next placed on a trial of Clozaril, with substantial improvement for approximately three weeks, at which time the patient again became noncompliant and his progress halted. The patient was prescribed a trial of Abilify, which he refused after two days. The patient then stopped taking all offered medicine, stating his belief that the medicines and his food were poisoned. He was offered Zyprexa but refused that completely. Dr. Weller testified that for at least a week before the hearing, the patient was completely mute, refusing or unable to speak at all to the doctor or other staff. Ms. Levine, in noting at the outset of the hearing that her client had chosen not to attend, also stated he had been mute in response to her questions. Dr. Weller testified on direct examination that two of the three antipsychotic medications he is recommending—Geodon and Haldol—were in fact never directly offered to the patient, because he had been refusing all medication and was not responding to any questioning. The third antipsychotic medication included in this petition, Clozaril, had been offered to the patient, who subsequently refused it. At the conclusion of the doctor’s testimony, the petitioner rested its case. The court found that the petitioner had met its burden of proof to establish that an order authorizing this patient’s involuntary treatment should be granted. Ms. Levine objected to the inclusion of Geodon and Haldol in the order because they had not specifically been offered to the patient. Over the objection of Ms. Levine, the court directed Dr. Weller, upon his return to the hospital, to ask the patient whether he would take Geodon or Haldol; explain those medications to the patient in the same way Dr. Weller had explained the others; and submit a supplemental affidavit to the court and the patient’s counsel, reporting on that interaction with the patient. Dr. Weller did submit such an affidavit, later on September 11, confirming he explained both Geodon and Hal-dol to the patient, who remained mute and refused to consent to either. The court notes that while the practice of petitioner may be to offer a patient every antipsychotic medication that is subsequently included in an application for treatment over objection, 14 NYCRR 27.8 does not explicitly require such individual requests. It is not infrequently the case that side-effect medications included in an application for treatment over objection have not been offered to a patient before the hearing. If a patient is not taking an antipsychotic medication that could cause side effects, there is no point in offering a side-effect medication. While the court notes that antipsychotic medications, not side-effect medications, are always the primary focus of an application for treatment over objection, in this case, where the doctor testifies and the absent patient’s counsel confirms that the patient has been mute, forcing the petitioner to specifically offer the patient every antipsychotic medication is an unreasonable and unnecessary exercise of form over substance. In fact, the court did order Dr. Weller to follow up with the patient regarding Geodon and Haldol, with the result anticipated by all present at the hearing. The court, like the Hospital, has some responsibility to ensure that a patient with a psychiatric illness receives appropriate care and treatment. (See Matter of Guia G., 173 Misc 2d 111, 117-118 [Sup Ct, Kings County 1997]; Matter of the Retention of D.R.B., Sup Ct, Broome County, Mar. 17, 2016, Guy, J., index No. 2016/0421.) On reading and filing the order to show cause dated September 8, 2017, the petition verified September 5, 2017, the affidavits of Alexander Factourovich, M.D., sworn to September 6, 2017, and Clifford Weller, M.D., sworn to September 5, 2017 and September 11, 2017, and the evaluation for treatment over objection attached thereto, and due deliberation having been had, the court finds by clear and convincing evidence that the patient lacks the capacity to make a reasoned decision about the proposed treatment and that the treatment proposed is narrowly tailored to give effect to the liberty interests of the patient. It is therefore ordered that United Health Services Hospitals, Binghamton General Hospital, through Clifford Weller, M.D., and/or other physicians and/or other authorized and qualified health care employees, pursuant to the supervision of such physicians, and/or a hospital under the jurisdiction of the New York State Office of Mental Health to which the patient may be transferred, through its physicians and/or other authorized and qualified health care employees, are hereby granted permission and authorized to administer to the patient up to 160 mg of Geodon daily, by mouth, in divide doses or up to 40 mg daily via intramuscular injection; and it is further ordered that United Health Services Hospitals, Bingham-ton General Hospital, through Clifford Weller, M.D., and/or other physicians and/or other authorized and qualified health care employees, pursuant to the supervision of such physicians, and/or a hospital under the jurisdiction of the New York State Office of Mental Health to which the patient may be transferred, through its physicians and/or other authorized and qualified health care employees, are hereby granted permission and authorized to administer to the patient up to 20 mg of Haldol daily by mouth or via intramuscular injection; and it is further ordered that United Health Services Hospitals, Binghamton General Hospital, through Clifford Weller, M.D., and/or other physicians and/or other authorized and qualified health care employees, pursuant to the supervision of such physicians, and/or a hospital under the jurisdiction of the New York State Office of Mental Health to which the patient may be transferred, through its physicians and/or other authorized and qualified health care employees, are hereby granted permission and authorized to administer to the patient up to 500 mg of Clozaril daily, by mouth; and it is further ordered that, in addition to the aforesaid medications, United Health Services Hospitals, Binghamton General Hospital, through Clifford Weller, M.D., and/or other physicians and/or other authorized and qualified health care employees, pursuant to the supervision of such physicians, and/or a hospital under the jurisdiction of the New York State Office of Mental Health to which the patient may be transferred, through its physicians and/or other authorized and qualified health care employees, are hereby granted permission and authorized to administer to the patient up to two mg of Cogentin as needed, by mouth, for adverse effects of the above medications; and it is further ordered that, in addition to the aforesaid medications and treatments, United Health Services Hospitals, Binghamton General Hospital, through Clifford Weller, M.D., and/or other physicians and/or other authorized and qualified health care employees, pursuant to the supervision of such physicians, and/or a hospital under the jurisdiction of the New York State Office of Mental Health to which the patient may be transferred, through its physicians and/or other authorized and qualified health care employees, pursuant to the supervision of such physicians, are hereby granted permission and authorized to administer to the patient such tests, including vital signs, electrocardiograms, and/or laboratory and/or blood tests, including obtaining blood and/or urine samples, as may be necessary to monitor the patient’s therapeutic level of medication, and/or potential adverse effects of medications and/or treatment.