■ JOANN FERRETTI, Respondent, v TOWN OF GREENBURGH et al., Defendants, and COUNTY OF WESTCHESTER et al., Appellants. [595 NYS2d 494] —In an action to recover damages for false imprisonment, medical malpractice, and deprivation of civil rights, the appeal is from an order of the Supreme Court, Westchester County (Ingrassia, J.), dated October 14, 1992, which denied the appellants' motion for summary judgment dismissing the complaint insofar as it is asserted against them.

Ordered that the order is reversed, on the law, with costs, the appellants' motion is granted, the complaint is dismissed insofar as it is asserted against them, and the action against the remaining defendants is severed.

This case arises out of the plaintiff's involuntary commitment and detention for almost 48 hours at the Westchester County Medical Center Psychiatric Unit (hereinafter Medical Center) pursuant to Mental Hygiene Law § 9.37. The plaintiff brought this action asserting causes of action sounding in false imprisonment, negligence, medical malpractice, and deprivation of her civil rights. The crux of the plaintiff's claim is that the decision to commit her involuntarily was reached negligently and constituted malpractice. The essential facts are not in dispute.

On May 2, 1988, at around 12:10 A.M., the police went to the plaintiff's apartment after receiving a complaint from a motorist whose car the plaintiff had attacked with a baseball bat. When the police arrived, they saw the plaintiff standing on her balcony, yelling and pointing to another car that was in the area. The police stopped that car, only to discover that the driver lived in the area and was merely looking for a parking space. The plaintiff admitted attacking the first car with a baseball bat, but stated that she had done so because the driver was part of a group of persons who were harassing her by scratching at her door and jiggling her doorknob. The plaintiff asserted that she was being harassed because of the part she played in securing the release of a friend who had been kidnapped several weeks prior to the attack. According

to the plaintiff, she was scheduled to testify before the Grand Jury concerning the kidnapping, and the police had warned her that several members of the kidnapping group were still at large.

During this questioning, the plaintiff appeared agitated and was constantly jumping up to listen to noises she claimed she heard at the door and elsewhere. Each time she claimed to hear noises, however, the police searched the area but heard and observed nothing. Accordingly, the police summoned the Westchester County Mobile Crisis Intervention-Psychiatric Center Unit (hereinafter the crisis unit) to evaluate the plaintiff. Dr. Neil M. Smoke, a psychiatrist with the unit, examined the plaintiff and found that she had "pressured" speech (rapid, anxious speech), displayed a paranoid disorder, and should be evaluated further to rule out the possibility that she was suffering from a personality disorder. Because the plaintiff complained of being tired, Dr. Smoke prescribed 50 milligrams of Benadryl and directed that she be examined by the crisis team the next morning when he believed a "clearer picture" could be developed concerning her condition.

The next morning, the plaintiff was examined by a second crisis unit psychiatrist, Dr. Carol Achtman. Based on the plaintiff's persisting belief that unknown persons were harassing her, her lack of "proper insight into the inappropriateness" of her attack on the stranger's car the previous night, and her "lack of judgment and impulse control", Achtman determined that the plaintiff was a substantial risk of harm to others and in need of immediate inpatient care. The plaintiff was taken to the Medical Center for emergency observation and treatment. Upon arrival at the Medical Center, the plaintiff was evaluated by Dr. Jonathan Greenfield, who concurred in Dr. Achtman's findings. Thus, the plaintiff was admitted to the Medical Center and held there for just under 48 hours. It appears that neither the examining psychiatrists nor the police ever checked the veracity of the plaintiff's story concerning the kidnapping of her friend, which kidnapping apparently had in fact occurred.

Thereafter, the plaintiff commenced this action. The appellants moved for summary judgment, arguing that the unrebutted expert medical evidence and opinions in their moving papers established that no medical malpractice occurred. In response, the plaintiff contended that there was a question of fact as to whether the psychiatrists committed malpractice when they admitted her to the Medical Center without checking the veracity of her kidnapping story. Moreover, the plain-

tiff asserted that this omission so "bespeaks" of negligence that expert testimony was not necessary. The court denied the motion. We now reverse.

The plaintiff makes no claim that the authorities failed to follow the technical requirements of the Mental Hygiene Law in temporarily committing her. Mental Hygiene Law § 9.37 (a) provides that a person may be involuntarily committed to a hospital when, in the opinion of the proper authority, the person has "a mental illness for which immediate inpatient care and treatment" is appropriate and which is "likely to result in serious harm to himself or others." Serious harm includes "violent behavior by which others are placed in reasonable fear of serious physical harm" (Mental Hygiene Law § 9.37 [a] [2]). Rather than challenge the procedures employed, the plaintiff maintains that the decision to commit her involuntarily was reached negligently, thereby giving rise to causes of action sounding in negligence, false imprisonment, medical malpractice, and violations of her civil rights (presumably under 42 USC § 1983).

To establish a cause of action to recover damages for false imprisonment, the plaintiff must show: (1) the defendant intended to confine her, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged *(see, Broughton v State of New York,* 37 NY2d 451, *cert denied sub nom. Schanbarger v Kellogg,* 423 US 929; *Gonzalez v State of New York,* 110 AD2d 810). Commitment pursuant to Mental Hygiene Law article 9 is privileged in the absence of medical malpractice *(see, Jenkins v Wilbur,* 72 AD2d 822; *Gonzalez v State of New York, supra; Welch v County of Westchester,* 177 AD2d 627; *Welch v County of Westchester,* 150 AD2d 371). Therefore, in order to prevail on her cause of action sounding in false imprisonment, the plaintiff must prove medical malpractice. Similarly, in a case such as this, because a violation of civil rights under 42 USC § 1983 has almost identical elements to that of a cause of action sounding in false imprisonment *(see, Raysor v Port Auth.,* 768 F2d 34, *cert denied* 475 US 1027; *Hines v City of Buffalo,* 79 AD2d 218), the same analysis would apply. Moreover, as the mental hygiene laws have been held constitutional on their face *(see, Project Release v Prevost,* 722 F2d 960; *Woe v Cuomo,* 729 F2d 96, *cert denied* 469 US 936), proper application of their dictates would not violate the plaintiff's civil rights. Therefore, the plaintiff's cause of action to recover damages for a deprivation of her civil rights requires a finding of medical malpractice. The

plaintiff's negligence cause of action also is essentially a restatement of the medical malpractice cause of action *(see, Stanley v Lebetkin,* 123 AD2d 854; *Rubenstein v Benedictine Hosp.,* 790 F Supp 396). In brief, all of the plaintiff's causes of action ultimately turn on the issue of medical malpractice.

In support of their motion for summary judgment, the appellants submitted affidavits from the psychiatrists responsible for committing the plaintiff, both of whom described the facts upon which they based their diagnoses and asserted that neither their examinations nor their results deviated from sound medical practice or constituted malpractice. Dr. Achtman, the psychiatrist chiefly responsible for the commitment, directly refuted the plaintiff's assertions that she was committed based upon her kidnapping story. Achtman averred that "[w]hile I did not know if such an incident had happened, it was my opinion that regardless of its accuracy she was delusional and her very recent violent responses to those delusions was a matter of serious public concern. Plaintiff had just menaced a total stranger, and the thinking that prompted that assault was still present".

These affidavits, unlike the bare conclusory denials of malpractice found in *Winegrad v New York Univ. Med. Ctr.* (64 NY2d 851), contain sufficient evidentiary facts to establish a prima facie case for dismissal of the complaint *(see, Wind v Cacho,* 111 AD2d 808). Pursuant to this evidentiary showing, it was incumbent upon the plaintiff to come forward with proof in admissible form establishing the existence of a triable issue of fact *(see, Indig v Finkelstein,* 23 NY2d 728; *Bingham v Godfrey,* 114 AD2d 987). The issue concerned a medical diagnosis outside the experience and knowledge of an ordinary layperson. Therefore the plaintiff was required to submit expert medical opinion *(see, Recht v Teuscher,* 176 AD2d 863; *Fiore v Galang,* 64 NY2d 999). Instead, the plaintiff submitted the nonexpert conclusory affidavits of her attorneys, which are insufficient *(see, Roche v Hearst Corp.,* 53 NY2d 767). We reject the plaintiff's assertion that the acts complained of here "bespeak" of improper treatment and malpractice, so that no expert medical evidence was needed *(see, Hammer v Rosen,* 7 NY2d 376 [assault by a psychiatrist upon his patient]; *Wright v State of New York,* 31 AD2d 421 [no need for expert medical testimony in case where hospital allowed mentally ill, suicidal patient to remain alone in a room with an open, unscreened window after patient had threatened to jump and then did]). Since the plaintiff failed to submit sufficient evidence to raise a triable issue of fact, summary judgment should have been

granted. Bracken, J. P., Lawrence, Copertino and Pizzuto, JJ., concur.