*899 OPINION OF THE COURT
Gerard H. Rosenberg, J.
Plaintiff Thomas Ferris moves for an order, pursuant to CPLR 3212, granting partial summary judgment on his claim of false imprisonment as against defendants St. Luke’s-Roosevelt Hospital Center and Howard Hillman, H.D. Defendants cross-move for an order, pursuant to CPLR 3212, granting them summary judgment dismissing all claims as against them.
Facts and Procedural Background
Plaintiff commenced this action alleging false imprisonment against the hospital. Thereafter, he commenced a second action arising from the same circumstances against Dr. Hillman. By amended complaint dated June 27, 2005, plaintiff added two causes of action sounding in medical malpractice against defendants. On June 30, 2005, the two actions were consolidated.
Hore specifically, plaintiff alleges that, on December 30, 2002, when a coworker went to his apartment after he had been suspended from his employment as a nurse, she became concerned about his well-being, since he appeared to be intoxicated and had a stool positioned near an open window; plaintiff claims that he was cleaning the window. After 911 was telephoned, plaintiff was taken to Roosevelt Hospital. He was then transferred to the mental health unit of the St. Luke’s Hospital Division of St. Luke’s-Roosevelt Hospital, where he was involuntarily admitted.
Immediately upon being admitted, plaintiff alleges that he denied that he was suicidal. On December 31, 2002, he delivered a letter to a nurse demanding his release. Plaintiff was not released until January 9, 2003.
The Parties’ Contentions
Plaintiffs Contentions
Plaintiff argues that he is entitled to summary judgment on his cause of action for false imprisonment, since the letter that he delivered on December 31, 2002 was sufficient to begin the process of obtaining a hearing pursuant to Hental Hygiene Law § 9.39 (a). Delivery of the letter is reflected in plaintiffs hospital records and Dr. Hillman testified that the letter constituted an adequate request for a release. Despite the receipt of this letter, no hearing was held and plaintiff was released on January 9, 2003.
*900 Defendants’ Contentions
In opposition to plaintiff’s motion and in support of their cross motion, defendants allege that, on December 28, 2002, plaintiff presented to the hospital’s Comprehensive Psychiatric Emergency Program (CPEP), complaining of feeling depressed, being unable to sleep, and having decreased energy and suicidal ideations; the records indicate that plaintiff was taking Valium and Prozac and had a history of depression, alcohol abuse and cocaine abuse. He was treated with Seroquel and Benadryl, remained overnight and was instructed to see his psychiatrist. When plaintiff was brought to the hospital on December 30, 2002, it was believed that he posed a potential danger to himself and he was involuntarily admitted by way of a two-physician certification because of his long history of suicidal ideation. Plaintiff was initially going to be discharged on January 3, 2003, but “that discharge was eventually rescinded because of the understanding that plaintiff could possibly lose his job if he was not admitted into a rehabilitation program.” Accordingly, after a family meeting, it was decided that plaintiff would be discharged on January 9, 2003.
Defendants argue that plaintiffs contention that his letter of December 31, 2002 required that he be provided with a hearing on the issue of the appropriateness of continued confinement within five days of receipt pursuant to Mental Hygiene Law § 9.39 (a) is without merit, since actions or inactions under the Mental Hygiene Law are privileged and that the privilege can only be pierced by proof of medical malpractice, which plaintiff cannot establish. Defendants therefore conclude that the complaint must be dismissed as against them. Defendants also argue that although their cross motion was not made within 60 days as required by this court’s rules, inasmuch as plaintiff made his motion for summary judgment on the eve of the expiration of the 60-day period, the court should exercise its discretion and hear their cross motion, since there is no evidence of dilatory conduct and resolution of the motion will not delay the action.
In their reply affirmation, defendants contend that plaintiff was not admitted to the hospital pursuant to Mental Hygiene Law § 9.39, which pertains to emergency admissions for immediate observation, care and treatment, as he claims, but was instead admitted pursuant to Mental Hygiene Law § 9.27, which pertains to involuntary admissions on medical certification, as is indicated by the two physician certificates dated December *901 30, 2002 and as is set forth in the notice of status and rights that was given to plaintiff when he was admitted. This is alleged to be significant because if a person is admitted under Mental Hygiene Law § 9.27, his or her right to demand a hearing is governed by Mental Hygiene Law § 9.31 (b), which does not require that a patient be provided with a hearing within five days of demand, as does Mental Hygiene Law § 9.39.
False Imprisonment
The Law
It is well settled that the proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issue of fact (see e.g. Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Zuckerman v City of New York, 49 NY2d 557 [1980]). Once the proponent has met the initial burden of establishing entitlement to judgment as a matter of law, the party opposing summary judgment must demonstrate that a triable issue of fact exists (see e.g. Alvarez, 68 NY2d at 324; Silverman v Perlbinder, 307 AD2d 230 [2003]; Daljun Yu v Song Su Pae, 201 AD2d 697 [1994]).
In order to defeat a motion for summary judgment, the opposing party is required to present a material issue of evidentiary fact comprised of more than just mere speculation or conjecture (see e.g. Cillo v Resjefal Corp., 16 AD3d 339, 340 [2005], citing Castro v New York Univ., 5 AD3d 135, 136 [2004]). Mere conjecture or surmise will not suffice (see e.g. Youthkins v Cascio, 298 AD2d 386 [2002], affd 99 NY2d 638 [2003]; Lahowin v Ganley, 265 AD2d 530 [1999]). Moreover, the motion cannot be defeated by the assertion of new theories not previously pleaded (see e.g. Figueroa v Gallager, 20 AD3d 385, 387 [2005]; Mompoint v New York City Tr. Auth., 8 AD3d 539, 540 [2004]; Harrington v City of New York, 6 AD3d 662, 663 [2004]; Slacin v Aquafredda, 2 AD3d 624, 625 [2003]).
“In order to recover on a cause of action for false imprisonment, four elements must be proved by the plaintiff: (1) the defendant’s intent to confine, (2) the plaintiffs consciousness of the confinement, (3) that the confinement was involuntary and (4) that the confinement was not privileged” (Gonzalez v State of New York, 110 AD2d 810, 812 [1985], citing Broughton v State of New York, 37 NY2d 451, 456 [1975], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975]; Parvi v City of Kingston, 41 NY2d 553, 556 [1977]). As is also relevant herein, *902 “in an action for damages for false imprisonment, the burden of establishing that the detention was privileged is on those charged with the commission of that tort” (Hollender v Trump Vil. Coop., 58 NY2d 420, 425 [1983], citing Parvi, 41 NY2d at 556; Broughton, 37 NY2d at 456).
The Mental Hygiene Law provides several grounds upon which a patient may be involuntarily confined. As is relevant to the issues now before the court, Mental Hygiene Law § 9.27, involuntary admission on medical certification, provides detailed procedures to be followed if a person is to be involuntarily retained. Pursuant to Mental Hygiene Law § 9.27 (a), “[t]he director of a hospital may receive and retain therein as a patient any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians, accompanied by an application for the admission of such person.” The phrase “in need of involuntary care and treatment” is defined to mean “that a person has a mental illness for which care and treatment as a patient in a hospital is essential to such person’s welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment” (Mental Hygiene Law § 9.01). Section 9.27 (b) then lists the persons who may execute an application, which list includes any person with whom the person alleged to be mentally ill resides; the father or mother, husband or wife, brother or sister, or the child of any such person or the nearest available relative; the committee of such person; an officer of any public or well recognized charitable institution or agency or home, including but not limited to the superintendent of a correctional facility; the director of community services or social services official; the director of the hospital or of a general hospital; the director or person in charge of a facility providing care to alcoholics, or substance abusers or substance dependent persons; and a qualified psychiatrist who is either supervising the treatment of or treating such person for a mental illness in a facility licensed or operated by the office of mental health.
As is also relevant herein, Mental Hygiene Law § 9.27 (d) provides:
“Before an examining physician completes the certificate of examination of a person for involuntary care and treatment, he shall consider alternative forms of care and treatment that might be adequate to provide for the person’s needs without requiring involuntary hospitalization. If the examining physi *903 cían knows that the person he is examining for involuntary care and treatment has been under prior treatment, he shall, insofar as possible, consult with the physician or psychologist furnishing such prior treatment prior to completing his certificate.”
Following admission, Mental Hygiene Law § 9.27 (e) requires:
“The director of the hospital where such person is brought shall cause such person to be examined forthwith by a physician who shall be a member of the psychiatric staff of such hospital other than the original examining physicians whose certificate or certificates accompanied the application and, if such person is found to be in need of involuntary care and treatment, he may be admitted thereto as a patient as herein provided.”
If a patient is involuntarily admitted on medical certification, Mental Hygiene Law § 9.31 (a) provides that he, she, or any relative, friend or the mental hygiene legal service may request a hearing. Mental Hygiene Law § 9.31 (b) provides:
“It shall be the duty of the director upon receiving notice of such request for hearing to forward forthwith a copy of such notice with a record of the patient to the supreme court or the county court in the county designated by the applicant, if one be designated, or if no designation be made, then to the supreme court or the county court in the county where such hospital is located.”
As is relevant herein Mental Hygiene Law § 9.39, emergency admissions for immediate observation, care, and treatment, provides:
“(a) The director of any hospital maintaining adequate staff and facilities for the observation, examination, care, and treatment of persons alleged to be mentally ill and approved by the commissioner to receive and retain patients pursuant to this section may receive and retain therein as a patient for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others. ‘Likelihood to result in serious harm’ as used in this article shall mean:
“1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or *904 serious bodily harm or other conduct demonstrating that he is dangerous to himself, or “2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.”
The statute further sets forth the procedure to be followed for such admission, i.e., the director shall admit the patient
“only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of this section. Such person shall not be retained for a period of more than forty-eight hours unless within such period such finding is confirmed after examination by another physician who shall be a member of the psychiatric staff of the hospital.” (Id.)
As is also relevant to the issues now before the court, the statute provides in pertinent part that:
“[i]f at any time after admission, the patient, any relative, friend, or the mental hygiene legal service gives notice to the director in writing of request for court hearing on the question of need for immediate observation, care, and treatment, a hearing shall be held as herein provided as soon as practicable but in any event not more than five days after such request is received, except that the commencement of such hearing may be adjourned at the request of the patient.” (Mental Hygiene Law § 9.39 [a].)
In order to allow a patient to implement the above provisions, Mental Hygiene Law § 33.15 (a) provides that “[a] person retained by a facility or the department or a relative or friend on his behalf is entitled to a writ of habeas corpus to question the cause and legality of detention upon proper application.” Subdivision (b) goes on to provide that “[u]pon the return of such a writ of habeas corpus, the court shall examine the facts concerning the person’s alleged mental disability and detention.”
It has been held, as argued by defendants, that commitment pursuant to Mental Hygiene Law article 9 is privileged in the absence of medical malpractice (see e.g. Tewksbury v State of New York, 273 AD2d 376 [2000] [claimant was involuntarily committed for 10 days pursuant to Mental Hygiene Law § 9.37], lv denied 95 NY2d 766 [2000]; Matter of E.K. v State of New York, 235 AD2d 540 [1997] [claimant was involuntarily admit *905 ted on an emergency basis pursuant to Mental Hygiene Law § 9.39 (a) for three days], lv denied 89 NY2d 815 [1997]; Ferretti v Town of Greenburgh, 191 AD2d 608 [1993] [involuntary commitment and detention for almost 48 hours pursuant to Mental Hygiene Law § 9.37], lv dismissed 82 NY2d 748 [1993], lv denied 82 NY2d 662 [1993]; Gonzalez, 110 AD2d 810 [involuntary commitment for three days pursuant to Mental Hygiene Law § 9.39]; Welch v County of Westchester, 177 AD2d 627 [1991] [confinement under Mental Hygiene Law § 9.37 (a)]). Stated differently, “[b]ecause a determination pursuant to Mental Hygiene Law article 9 requires a medical judgment by a treating physician, the determination to retain a patient is privileged only in the absence of negligence, or malpractice, in the exercise of that medical judgment” (Morgan v City of New York, 32 AD3d 912, 914 [2006], citing Tewksbury, 273 AD2d 376; Matter of E.K., 235 AD2d 540; Ferretti, 191 AD2d at 608).
In addressing claims arising from what is alleged to be an improper involuntary confinement pursuant to Mental Hygiene Law article 9, however, the Court has recognized that
“since an involuntary confinement to a mental health care facility constitutes a ‘massive curtailment of liberty’ (Vitek v Jones, 445 US 480, 491 [1980]), considerations of due process require that [the institution] comport its conduct with the procedures outlined in the Mental Hygiene Law, and take steps properly to apply the criteria articulated therein” (Morgan, 32 AD3d at 915 [decedent was confined, purportedly pursuant to Mental Hygiene Law §§ 9.37 and 9.39, for six days]).
In this regard, it has been held that
“ ‘the layers of professional [and judicial] review’ contained in the New York State Mental Hygiene Law’s elaborate notice and hearing provisions, including notice to relatives and others designated by the patient, and the availability of a judicial hearing within five days of demand by the patient, relative or friend, as well as habeas corpus relief . . . meets procedural due process minima” (Project Release v Prevost, 722 F2d 960, 975 [1983]).
Although an institution’s failure to provide the required hearings does not constitute a ground for release, it has been held that the “failure to respond to the patient’s requests for a hearing challenging his commitment pursuant to Mental Hygiene Law § 9.31, and [the institution’s] retention of the patient *906 without legal status after his authorized retention expired . . . are troubling” (State of N.Y. ex rel. Karur v Carmichael, 41 AD3d 349, 350 [2007]; accord Matter of Guia G., 173 Misc 2d 111 [1997] [the failure to timely apply for continued retention of the patient caused an illegal detention; the hospital’s failure to comply with the statute was unacceptable and could not be condoned or disregarded]). Hence, the court has rigidly applied the procedural dictates of Mental Hygiene Law article 9. For example, in the case of People ex rel. Noel B. v Jones (230 AD2d 809, 809-810 [1996], lv dismissed 88 NY2d 1065 [1996]), petitioner was admitted to the Kingsborough Psychiatric Center on November 27, 1995 pursuant to Mental Hygiene Law § 9.39. Respondent did not apply for the involuntary admission of petitioner until January 3, 1996, which was past the 15-day deadline, and respondent did not apply for a retention order until February 2, 1996, which was seven days past the statutory deadline. In holding that petitioner’s proceeding for a writ of habeas corpus, which was commenced on February 7, 1996 on the ground that his continued involuntary confinement was illegal, the Court stated that:
“the Supreme Court erred in dismissing the writ as academic. The record establishes that the petitioner’s ‘discharge’ from Kingsborough was a transparent attempt by the respondent to avoid the legal consequences of the failure to follow statutory procedures. The respondent did not dispute the petitioner’s allegations that he was transported in handcuffs from Kingsborough to the Kings County Hospital emergency room, that he was admitted to that hospital overnight for evaluation, and that he was readmitted to Kingsborough the next day.
“The record establishes that the petitioner was illegally detained when he commenced this proceeding (see, e.g., People ex rel. Jacobs v Director of Gowanda State Hosp., 19 AD2d 858, affd 14 NY2d 663). Because civil commitment constitutes a significant deprivation of liberty (see, Addington v Texas, 441 US 418), the respondent’s failure to comply with the statute cannot be condoned.” (Id. at 810-811.)
Also relevant is the case of Ruhlmann v Smith (323 F Supp 2d 356, 360 [2004]), where the court held that “[w]hether the confinement here was privileged depended upon whether the mandates of Mental Hygiene Law § 9.39 had been fulfilled.” Similarly, in the case of Welch v County of Westchester (150 *907 AD2d 371, 371-372 [1989]), the Court held that defendant’s confinement of plaintiff was not privileged pursuant to Mental Hygiene Law § 9.37 (a), since defendant did not comply with the requirement that a certificate of another examining physician was necessary since, within 72 hours after the patient was admitted, she did not agree to remain in the hospital as a voluntary patient, and defendant failed to offer proof that a second examining physician filed the appropriate certificate.
Discussion
Herein, the facts clearly establish that plaintiff was involuntarily admitted to the hospital on December 30, 2002 after being taken to the hospital by ambulance, in handcuffs; that he delivered a written request for a hearing on the next day; and that his confinement continued until January 9, 2003, although no hearing was held. Applying the above principles of law to the facts of this case, the court rejects defendants’ assertion that these facts cannot support a cause of action for false imprisonment in the absence of a showing of medical malpractice.
In so holding, it must be noted that although defendants contend that their determination to confine plaintiff is privileged pursuant to Mental Hygiene Law § 9.39, none of the cases relied upon for this proposition address the failure of an institution to provide a patient with a hearing within five days of a demand therefor, as is required pursuant to the statute (see e.g. Tewksbury, 273 AD2d 376; Matter of E.K., 235 AD2d 540; Ferretti, 191 AD2d 608). Similarly, defendants’ reliance upon Tewksbury (273 AD2d 376), Matter of E.K. (235 AD2d 540) and Ferretti (191 AD2d 608) is also misplaced, since the Court in each of those cases found that the evidence submitted by defendant established that the decision to involuntarily commit the patient was made in accordance with the procedures set forth in Mental Hygiene Law §§ 9.37 and 9.39, and that the proper application of their dictates would not violate the plaintiffs civil rights, respectively, findings that cannot be made herein.
Defendants’ claim that a plaintiff cannot succeed on a claim of false imprisonment in the absence of a showing of medical malpractice is also belied by the holding in Morgan. Therein, the Court found that the plaintiffs claim that the defendant violated the provisions of Mental Hygiene Law § 9.39 when it failed to take the necessary steps to properly apply the statutory criteria stated causes of action alleging a violation of the decedent’s Fourth and Fourteenth Amendment rights pursuant *908 to 42 USC § 1983, premised, upon the claim that the defendant deprived the decedent of liberty in the absence of procedural due process, so that these portions of his claim were permitted to go to trial (Morgan, 32 AD3d at 914-915). Similarly, as discussed above, People ex rel. Noel B. (230 AD2d at 809-810), Ruhlmann (323 F Supp 2d at 360) and Welch (150 AD2d at 371-372) also support the conclusion that defendants’ actions are not privileged pursuant to Mental Hygiene Law article 9 where the procedural safeguards set forth in the statutory provisions relied upon are not followed.
Accordingly, the court agrees that pursuant to Mental Hygiene Law § 9.39, defendants were obligated to provide plaintiff herein with a hearing within five days of his demand. Indeed, any other holding would vitiate the due process protections afforded by Mental Hygiene Law § 9.39 and allow a facility to hold a mentally ill person indefinitely, without access to the court for review, a result that this court will not countenance.
Apparently recognizing that the court may reach this conclusion, in their reply papers, defendants make the belated attempt to assert that plaintiff was not admitted pursuant to Mental Hygiene Law § 9.39, but was instead admitted pursuant to Mental Hygiene Law § 9.27. The court finds defendants’ argument to avoid summary judgment on this ground to be unpersuasive. In the first instance, as was noted above, a motion for summary judgment cannot be defeated by the assertion of new theories not previously pleaded (see e.g. Figueroa, 20 AD3d at 387; Mompoint, 8 AD3d at 540; Harrington, 6 AD3d at 663; Slacin, 2 AD3d at 625).
More significantly, Dr. Merriam’s affidavit and the deposition testimony of both plaintiff and Dr. Millman make it clear that plaintiff was transported to the hospital by ambulance and admitted through the emergency room. This unequivocally establishes that he was admitted to the hospital on an emergency basis, which admission would trigger the procedural safeguards afforded by Mental Hygiene Law § 9.39. Further, defendants contend that plaintiff was involuntarily confined because he was suicidal, a ground for admission that is specifically set forth in Mental Hygiene Law § 9.39 (a). In addition, the fact that two physicians signed certificates stating that plaintiff should be admitted does not compel the conclusion that he was admitted pursuant to Mental Hygiene Law § 9.27, since Mental Hygiene Law § 9.37 similarly requires the certificate of two physicians if a patient is to be retained more than 72 hours, *909 i.e., one prior to admission and one within 72 hours thereafter (Mental Hygiene Law § 9.37 [a]), while section 9.39 provides that a person shall be retained only if a staff physician finds that the person qualifies and that he or she shall not be retained more than 48 hours unless the finding is confirmed by another staff physician.
Moreover, defendants make no attempt to establish that the admission of plaintiff complied with the detailed requirements of Mental Hygiene Law § 9.27, as discussed above. In this regard, defendants’ claim that the hospital complied with Mental Hygiene Law § 9.27 is based upon a conclusory allegation of counsel. The affirmation, which was not made on the basis of personal knowledge of the facts or supported by evidence in admissible form, is insufficient to defeat the motion for summary judgment (see e.g. Gelesko v Levy, 37 AD3d 528, 529 [2007]; Johannsen v Rudolph, 34 AD3d 338, 339 [2006]; Marietta v Scelzo, 29 AD3d 539, 540 [2006]).
Further, defendants fail to establish compliance with the provisions of Mental Hygiene Law § 9.27. For example, Mental Hygiene Law § 9.27 (b) requires that an application for admission be executed by a person specified therein. In this regard, the signature on the application in plaintiffs record is illegible, as is the title of the person, so that the court is unable to determine if he or she was authorized to file the application on plaintiff’s behalf. In addition, although the preprinted forms signed by the doctors who allegedly examined plaintiff prior to his admission recite that “I have considered alternative forms of care and treatment but believe that they are inadequate to provide for the needs of this person, or are not available,” no facts are offered to substantiate the claim and no affidavit or affirmation from either doctor is submitted. Similarly, although plaintiffs records reveal that Dr. Millman and the hospital were aware that plaintiff was being treated by Dr. Lacey, particularly since defendants rely upon plaintiffs earlier admission to the hospital and his release, with the direction that he see his treating psychiatrist, there is no indication that any attempt was made to consult with Dr. Lacey prior to completing the certificates. Accordingly, defendants fail to establish that plaintiff was, in fact, admitted pursuant to the procedures set forth in Mental Hygiene Law § 9.27.
Hence, because defendants herein “failed to establish that [they] acted in accordance with the Mental Hygiene Law, [they] did not sustain [their] burden of proving that [their] conduct *910 was privileged” (Lynskey v Bailey, 8 Misc 3d 107, 109 [2005]). It is therefore concluded that plaintiffs legal rights were violated by the failure to follow the basic procedural requirements of the Mental Hygiene Law (see generally Matter of Nancy H., 177 Misc 2d 30, 31 [1998]). From this it follows that plaintiffs demand for summary judgment on his cause of action for false imprisonment is granted.
Claim of Medical Malpractice
Defendants’ Contentions
In support of their cross motion seeking dismissal of plaintiffs malpractice claims against them, defendants argue that there were no departures from accepted standards of medical or psychiatric care in their treatment of plaintiff. This claim is made in reliance on an affidavit submitted by Dr. Arnold E Merriam, an alleged expert in the field of psychiatry, wherein he alleges that defendants treated plaintiff in accordance with good and accepted medical practice at all times. After reviewing the records of plaintiffs admission to the CPEP on December 28, 2002, as well as plaintiffs other medical records and the deposition testimony adduced herein, Dr. Merriam notes that plaintiff was brought to the hospital by ambulance and admitted again on December 30, 2002 “by way of a two-physician certification,” i.e., certifications by Dr. Melanie Spritz and Dr. Patricia Carey. Given plaintiff’s history of thoughts of suicide, his previous admission only days earlier, and being found intoxicated, with a stool near the window of his 27th floor apartment, defendants appropriately admitted him. Dr. Merriam further opines that plaintiffs discharge on January 3, 2003 was not appropriate, since Dr. St. Victor Hamiden testified that plaintiffs mother told her that plaintiff might lose his job if he was not admitted to rehabilitation, and since the hospital staff believed that such an occurrence could precipitate an episode of depression and increase his risk of suicide, plaintiffs discharge was properly refused.
In opposition, plaintiff submits an affidavit from his expert psychiatrist in which he alleges that defendants’ continued confinement of plaintiff was not sound and that the assertion that something could possibly happen which could then trigger an episode constituted a deviation from acceptable psychiatric practice. Plaintiffs expert alleges that after reviewing plaintiffs medical records and the deposition testimony, he is of the opinion that defendants deviated from accepted standards of *911 psychiatric practice by reversing their decision to discharge plaintiff on January 3, 2003 and continuing his confinement through January 9, 2003, since the evidence fails to establish any basis to conclude that after the decision to discharge was made, plaintiff was again determined to be a threat to himself and/or to others. More specifically, the expert avers that reliance upon an unsubstantiated statement made by a family member that plaintiff “could possibly lose his job if not admitted to an acute rehabilitation program,” which may then “precipitate an episode of depression and/or suicidality” does not meet the statutory criteria for involuntary confinement, since the determination that a person constitutes a threat to himself or to others is a deviation from accepted standards of psychiatric care when based upon nothing more than potentialities. Moreover, there is no indication anywhere in plaintiffs chart that he was suicidal after January 2, 2003.
Untimeliness of Defendants’ Cross Motion
Pursuant to CPLR 3212 (a), a party seeking summary judgment must do so within 120 days after the filing of the note of issue, “except with leave of court on good cause shown.” Rule 13 of the Kings County Supreme Court Uniform Civil Term Rules provides that motions for summary judgment shall be made within 60 days of the filing of the note of issue. Herein, the note of issue was filed on March 7, 2007 and defendants’ cross motion was not served until July 6, 2007, or almost four months later.
In addressing the issue of an untimely cross motion made in response to a timely motion for summary judgment, it has been held:
“ ‘[A]n untimely motion or cross motion for summary judgment may be considered by the court where, as here, a timely motion for summary judgment was made on nearly identical grounds [because] the nearly identical nature of the grounds may provide the requisite good cause (see CPLR 3212 [a]) to review the untimely motion or cross motion on the merits’ (Grande v Peteroy, 39 AD3d 590, 591-592 [2007]).” (Ellman v Village of Rhine-beck, 41 AD3d 635, 636 [2007] [citations omitted].)
In the alternative, “[a]n otherwise untimely cross motion may be made and adjudicated because a court, in the course of deciding the timely motion, may search the record and grant summary judgment to any party without the necessity of a cross *912 motion” (Filannino v Triborough Bridge & Tunnel Auth., 34 AD3d 280, 281 [2006], rearg denied, lv granted 2007 NY Slip Op 63165[U] [2007]).
Discussion
Herein, that branch of defendants’ cross motion seeking to dismiss plaintiffs claim of false imprisonment is properly before the court, since it raises the same issues that had to be addressed in disposing of plaintiffs timely motion for summary judgment. In fact, summary judgment could have been granted to defendants on plaintiffs motion pursuant to CPLR 3212 (b) had the court searched the record, without the need for the cross motion. Hence, the court has considered and denied defendants’ demand for summary judgment on this ground.
A different result must be reached, however, with regard to that branch of the cross motion seeking summary judgment on the issue of medical malpractice. Inasmuch as plaintiffs argument in support of his motion for summary judgment was predicated upon his contention that he need not establish malpractice in order to recover damages for defendants’ failure to comply with the procedural dictates of the Mental Hygiene Law, which argument was accepted in this decision, the court did not reach the issue of whether defendants’ actions constituted medical malpractice in disposing of his demand for summary judgment on his cause of action sounding in false imprisonment. From this it follows that since defendants failed to make any showing of good cause for the delay as is required pursuant to Brill v City of New York (2 NY3d 648 [2004]), their cross motion must be denied as untimely (see e.g. Bressingham v Jamaica Hosp. Med. Ctr., 17 AD3d 496, 496-497 [2005]).
In the alternative, defendants’ motion is without merit. To establish a prima facie case of liability in a medical malpractice action, a plaintiff must prove that the defendant deviated from accepted practice and that such deviation proximately caused his injuries (see e.g. Rebozo v Wilen, 41 AD3d 457, 458 [2007]; Salmeri v Beth Israel Med. Ctr.-Kings Highway Div., 39 AD3d 841, 841 [2007]; Thompson v Orner, 36 AD3d 791, 791-792 [2007]; Anderson v Lamaute, 306 AD2d 232, 233 [2003]). It is well settled that the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (see e.g. Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
Hence, “ ‘[o]n a motion for summary judgment, a defendant . . . has the initial burden of establishing the absence of any *913 departure from good and accepted medical practice or that the plaintiff was not injured thereby’ ” (Keevan v Rifkin, 41 AD3d 661, 662 [2007], quoting Williams v Sahay, 12 AD3d 366, 368 [2004]; accord Thompson, 36 AD3d at 792). The affidavit of Dr. Merriam, defendants’ expert, which sets forth both his qualifications and the specific facts in plaintiffs medical records leading to his conclusion that Dr. Millman and the hospital did not deviate from acceptable psychiatric practice, is sufficient to sustain this burden (see generally DiGiaro v Agrawal, 41 AD3d 764, 767 [2007]; Williams, 12 AD3d at 368; Yasin v Manhattan Eye, Ear & Throat Hosp., 254 AD2d 281, 282 [1998]).
“ ‘Once the defendant has made a prima facie showing, the burden shifts to the plaintiff to lay bare his or her proof and demonstrate the existence of a triable issue of fact’ ” (Gargiulo v Geiss, 40 AD3d 811, 811-812 [2007], quoting Chance v Felder, 33 AD3d 645, 645-646 [2006]). The affidavit submitted by plaintiffs expert, in which the expert opines that defendants deviated from good and accepted medical practice, is similarly sufficient to raise issues of fact, thereby defeating defendants’ cross motion (see generally Nassimi v Petrikovsky, 37 AD3d 676, 677 [2007]; Ruddy v Nolan, 37 AD3d 694, 695 [2007]; St. Aubrey v Smithtown Pediatric Group, P.C., 31 AD3d 629, 629-630 [2006]; Allone v University Hosp. of N.Y. Univ. Med. Ctr., 235 AD2d 447, 448 [1997]).
Conclusion
Plaintiffs motion for partial summary judgment on his claim of false imprisonment is granted. Defendants’ cross motion for summary judgment dismissing the complaint as against them is denied.